118. AUTOMOBILES—Sec. 6301 GC. discussed in relation to dealer's license.

Hon Chalmers R. Wilson, Commissioner of Motor Vehicles, requested an opinion on the following: "Whether or not the use of a dealer's license, placed by automobile manufacturers on new cars manufactured by them prior to sale, and while the same are being tested, is a proper and lawful use?"

An exception is taken to the reports of the Attorney General for 1921. This opinion held that under 6301 GC. a dealers license could be used only for the sale, lease, or other like disposition; the exception to it being that the opinion held that the propriety of the use of a dealers' license plate is dependent entirely upon the particular use that is being made of the automobile to which such tags are attached; and this, regardless of the purpose for which the automobile is owned. This interpretation would include service cars, trucks used in business, and other vehicles of a like nature, for they might also be used for the sale, lease, or other disposition. Sec. 6301 GC. specifically denies the use of such dealers plates to the latter class of vehicles.

The Attorney General replied:

Section 6301 expressly provides that a manufacturer of or dealer in motor vehicles shall make application - - - - and such license shall be displayed until it is sold or let for hire. The statute further provides that nothing therein shall be construed as to exempt any manufacturer or dealer from registration in respect to any other motor vehicle of which he is the owner. The former section of the statute might be construed to substantiate the conclusion reached in the Attorney General's reports of 1921, but in the light of both parts of the section their contention fails.

The specific question is: "Is the car for the purpose of testing, within the statute and is such testing an incident of sale?" The statute as construed shows this to be an incident of sale. However it is to be pointed out that no definite rule can be laid down to fit all cases as there are many ramifications to the question of "What is incident to the sale?" However any act that is not incident to the sale would come under the latter part of the section and would require the dealer to have the car registered.

## COMMON PLEAS COURT
RYAN et v. CINCINNATI HOMES CO.
### No. 12
Hamilton  Common  Pleas

Decided September, 1925

997. REAL ESTATE—Where a building has been constructed upon another's land, to be entitled to equitable relief, the owner must elect either to pass title and receive a fair price for the unimproved land and a reasonable rental for the period of time the building stood, or pay a fair price for the improvement.

DARBY, J.

John Ryan et. claims he is the owner of certain lands and that in 1918 the Cincinnati Model Homes Co. built an apartment on said land and has ever since collected the rents from said building and refuses to discontinue the collection of the rents unless restrained by the courts. The petition alleges further that the Homes Co. has collected $15,000 in rent in the period from 1918 to 1923 and prays damages for this amount.

The Homes Co. claims that it acted in good faith in improving the Ryan's land and did not know that they had not good title thereto; that they have collected rents openly from said improvement and that upon being apprised of their mistake offered to pay a fair sum for the land or to sell the improvement to Ryan at a fair price. It was further claimed that Ryan agreed to arbitration but that he did not carry out his share of the agreement as set down by the arbitrator.

The Homes Co. prays that Ryan's petition be dismissed and that he be forced to carry out the articles of the arbitration. It was contended by Ryan that the buildings belong to the owner of the land. The Homes Co. contended that where one acting innocently and in good faith and in mistake as to his boundaries, makes permanent improvements on property of another, the latter, when he seeks the relief of a court of equity, will have it granted to him only in case he does equity.

The Court held:

1. A maxim of equity is, "he who seeks equity must do equity," and is the maxim applicable to this case.

2. An equitable lien has not always been confined to cases in which a contract to reimburse could be implied at law.

3. "The right to a contribution or reimbursement from the owner of the land and the equitable lien on the property benefitted as a security therefor, have been extended to other cases where a party innocently and in good faith, though under a mistake as to the true

condition of the title makes improvements, which permanently increase the value of the property, so when the real owner seeks equity, he is required, under the principles of justice and equity, to repay the amount expended."

4. "One who makes improvements on land in the mistaken belief that he is the owner thereof is given by equity, a right of compensation for such improvements as against the true owner, and this right to compensation has been regarded as enforcible as against the land itself."

5. The equities of the case are with the Homes Co. and Ryan is entitled to the value of his land unimproved, with a reasonable rental for its use while the Homes Co. has been in possession; and Ryan should either convey the land upon such consideration to the Homes Co. or should pay it the value of the improvement made upon such lot.

Attorneys—Eckert, Cordes and Raidt for Ryan et; Murray, Seasongood and Robert P. Goldman for Homes Co.; all of Cincinnati.